**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
RYAN O'DELL,                                          :
                                                      :
        Plaintiff,        :   Civil Action No. 23-cv-7208
                                                      :
v.                                                    :   **COMPLAINT FOR VIOLATIONS OF**
                                                      :   **SECTIONS 14(a) AND 20(a) OF THE**
HERITAGE-CRYSTAL CLEAN, INC.,                          :   **SECURITIES EXCHANGE ACT OF**
FRED FEHSENFELD, JR., BRIAN                            :   **1934**
RECATTO, BRUCE BRUCKMANN,                              :
CHARLES E. SCHALLIOL, JIM                              :   **JURY TRIAL DEMANDED**
SCHUMACHER, MARY PAT THOMPSON,                         :
and ROBERT W. WILLMSCHEN, JR.,                         :
                                                      :
        Defendants.      :
---------------------------------------------------------  :

        Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

        1.    This is an action brought by Plaintiff against Heritage-Crystal Clean, Inc.

("Heritage-Crystal Clean or the "Company") and the members Heritage-Crystal Clean' board of

directors (the "Board" or the "Individual Defendants" and collectively with the Company, the

"Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-

9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Heritage-Crystal Clean

by affiliates of J.F. Lehman & Company ("J.F. Lehman").

        2.    Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on August 10, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby JFL-Tiger Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of JFL-Tiger Acquisition Co., Inc. ("Parent"), will merge with and into Heritage-Crystal Clean, with Heritage-Crystal Clean surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Parent and Merger Sub are both affiliates of J.F. Lehman. Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on July 19, 2023 (the "Merger Agreement"), each Heritage-Crystal Clean stockholder will receive $45.50 in cash (the "Merger Consideration") for each Heritage-Crystal Clean share owned.

3.      As discussed below, Defendants have asked Heritage-Crystal Clean' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Stifel, Nicolaus & Company, Incorporated ("Stifel") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Heritage-Crystal Clean' stockholders or, in

the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Heritage-Crystal Clean stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant Fred Fehsenfeld, Jr. has served as a member of the Board since 1999 and is the Chairman of the Board.

11.      Individual Defendant Brian Recatto has served as a member of the Board since 2012 and is the Company's Chief Executive Officer.

12.      Individual Defendant Bruce Bruckmann has served as a member of the Board since 2004.

13.      Individual Defendant Charles E. Schalliol has served as a member of the Board since 2008.

14.     Individual Defendant Jim Schumacher has served as a member of the Board since 2017.

15.      Individual Defendant Mary Pat Thompson has served as a member of the Board since 2022.

16.     Individual Defendant Robert W. Willmschen, Jr. has served as a member of the Board since 2008.

17.     Defendant Heritage-Crystal Clean is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 2000 Center Drive, Suite East C300, Hoffman Estates, Illinois 60192. The Company's stock trades on the NASDAQ Global Select Market under the symbol "HCCI."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.    **The Proposed Transaction**

20.     Heritage-Crystal Clean, through its subsidiary, Heritage-Crystal Clean, LLC, provides parts cleaning, hazardous and non-hazardous waste, and used oil collection services to small and mid-sized customers in the industrial and vehicle maintenance sectors in North America. It operates through two segments, Environmental Services and Oil Business. The Environmental Services segment offers parts cleaning, containerized waste management, wastewater vacuum, antifreeze recycling, emergency and spill response, and industrial and field services. The Oil Business segment engages in the collection of used oil, the sale of recycled fuel oil, and used oil filter removal and disposal activities, as well as the re-refining of used oil into lubricant base oil

4

and other products. The Company also collects and disposes wastewater. As of December 31, 2022, it operated through 105 branches serving approximately 104,000 customer locations. Heritage-Crystal Clean, Inc. was incorporated in 2007 and is headquartered in Hoffman Estates, Illinois.

21.    On June 26, 2023, the Company announced the Proposed Transaction:

> HOFFMAN ESTATES, Ill.–(BUSINESS WIRE)–Heritage-Crystal Clean, Inc. (Nasdaq: HCCI) ("Crystal Clean"), a leading provider of parts cleaning, hazardous and non-hazardous waste services, used oil re-refining, antifreeze recycling, industrial and field services, and emergency and spill response services, today announced that it has entered into a definitive merger agreement to be acquired by an investment affiliate of J.F. Lehman & Company ("JFLCO"), a leading private equity investment firm focused on the aerospace, defense, maritime and environmental sectors, in an all-cash transaction that values Crystal Clean at approximately $1.2 billion. Under the terms of the merger agreement, JFLCO will acquire all the outstanding shares of Crystal Clean for $45.50 per share in cash. The purchase price represents a premium of approximately 24.9% to Crystal Clean's 60-day volume-weighted average price on July 19, 2023, the last full trading day prior to today's announcement.

> "We are pleased to enter into this agreement with JFLCO, which we believe represents the best path forward for Crystal Clean to maximize value for our shareholders," said Crystal Clean's President and CEO, Brian Recatto. "For more than 20 years, we have executed on our mission and thoughtfully grown Crystal Clean to become the partner of choice nationwide for premier environmentally-sustainable solutions that have a tangible impact for customers, and we are excited to embark on this new chapter."

> "As a private company, we will have added flexibility and a deeply knowledgeable partner in JFLCO that understands our strengths and employee-empowered culture. We are grateful to our talented team, who have been instrumental in establishing Crystal Clean as the leader we are today and look forward to building on our momentum on the path ahead," Mr. Recatto added.

> "At a time when businesses across industries are more environmentally conscious and highly focused on running cleaner, we are excited to partner with Crystal Clean – a clear category leader

and unparalleled provider of environmental and waste disposal services," said Glenn Shor, Partner at J.F. Lehman & Company. "This partnership underscores our confidence in Crystal Clean's business, vision and reputation as a trusted provider for a diversified, blue-chip customer base. We look forward to working closely together to best position the Company for sustainable, long-term success."

**Transaction Details**

Crystal Clean's Board of Directors has unanimously approved the merger agreement and recommends that Crystal Clean shareholders vote in favor of the transaction.

The transaction is expected to close in the fourth quarter of 2023, subject to customary closing conditions, including approval by Crystal Clean shareholders and the expiration of the waiting period under the Hart-Scott-Rodino (HSR) Antitrust Improvements Act of 1976. Upon completion of the transaction, Crystal Clean will become a privately held company and shares of Crystal Clean common stock will no longer be listed on the Nasdaq Stock Exchange or trade in any other public market.

Fully committed debt financing in support of the transaction is being provided by Jefferies Finance LLC and Sumitomo Mitsui Banking Corporation. The merger is not subject to any financing condition.

Additionally, The Heritage Group and its affiliates, which collectively hold 26.70% of the Crystal Clean common shares, and Brian Recatto, who holds 3.23% of the Crystal Clean common shares, have each entered into a voting and support agreement with JFLCO pursuant to which each has committed to vote all of its Crystal Clean common shares in favor of the transaction.

The merger agreement provides for a "go-shop" provision under which Crystal Clean and its Board of Directors may actively solicit, receive, evaluate and potentially enter negotiations with parties that offer alternative proposals during a 35-day period following the execution date of the definitive agreement, expiring at 11:59 p.m. Eastern Time on August 23, 2023. There can be no assurance this process will result in a superior proposal. Crystal Clean does not intend to disclose developments about this process until it determines whether such disclosure is appropriate or otherwise required.

**Advisors**

William Blair & Company is serving as financial advisor to Crystal Clean, Stifel delivered a fairness opinion to Crystal Clean with respect to the proposed transaction, and McDermott Will & Emery LLP is serving as legal counsel to Crystal Clean.

Houlihan Lokey, Inc. is serving as lead financial advisor to JFLCO, and Jefferies LLC is also serving as financial advisor to JFLCO; Shearman & Sterling LLP and Jones Day are serving as legal counsel to JFLCO.

\* \* \*

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Heritage-Crystal Clean' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23.     On August 10, 2023, Heritage-Crystal Clean filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections by Heritage-Crystal Clean management and relied upon by Stifel in its analyses. The

Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Stifel with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Heritage-Crystal Clean management provided to the Board and Stifel. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric: Adjusted EBITDA, but fails to provide line items used to calculate this metric *and/or* a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

26.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with

GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a
> uniform definition and its title does not describe how it is calculated.
> Accordingly, a clear description of how this measure is calculated,
> as well as the necessary reconciliation, should accompany the
> measure where it is used. Companies should also avoid
> inappropriate or potentially misleading inferences about its
> usefulness. For example, "free cash flow" should not be used in a
> manner that inappropriately implies that the measure represents the
> residual cash flow available for discretionary expenditures, since
> many companies have mandatory debt service requirements or other
> non-discretionary expenditures that are not deducted from the
> measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the

forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable

GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

29.     The Proxy Statement also omits the Company's projected unlevered cash flow for

the calendar year 2023 through calendar year 2027, a metric relied upon by Stifel in its *Discounted*

*Cash Flow Analysis*.

<u>Omissions and/or Material Misrepresentations Concerning Stifel's Financial Analyses</u>

30.     With respect to Stifel's *Selected Company Analysis*, the Proxy Statement fails to

disclose the financial metrics and multiples for each company selected by Stifel for the analysis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April
4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     With respect to Stifel's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected by Stifel for the analysis.

32.     With respect to Stifel's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projected unlevered cash flows for the Company for the calendar year 2023 through calendar year 2027; (ii) the terminal value for the Company; (iii) the inputs and assumptions underlying the exit multiples ranging from 8.0x to 9.0x for the Company's environmental services segment and 3.5x to 4.5x for its oil business segment; (iv) the inputs and assumptions underlying the range of perpetual growth rates of 2.00% to 3.00% for its environmental services segment and -.50% to 0.50% for its oil business segment; (v) the inputs and assumptions underlying the discount rates ranging from 11.8% to 12.8% for its environmental services segment and 14.4% to 15.4% for its oil business segment; and (vi) the weighted cost of capital of the Company for each segment.

33.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

36.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

39.      The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

40.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.      The Individual Defendants acted as controlling persons of Heritage-Crystal Clean within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Heritage-Crystal Clean, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Heritage-Crystal Clean, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.      Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Heritage-Crystal Clean, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 15, 2023                    **MELWANI & CHAN LLP**


                                          By:  */s/ Gloria Kui Melwani*
                                                Gloria Kui Melwani (GM5661)
                                                1180 Avenue of the Americas, 8th Fl.
                                                New York, NY 10036

14

Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*